**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                    :
JUAN PAULINO,                       :
                                    :   Civil Action No. 07-5315 (RBK)
              Plaintiff,            :
                                    :
         v.                         :       O P I N I O N
                                    :
BURLINGTON COUNTY JAIL, et al.,     :
                                    :
              Defendants.           :
_____:
```

**APPEARANCES:**

Juan Paulino, Plaintiff, <u>Pro Se</u>
# 41459-050
Unit A-Pod 6
MVCC
555 I Cornell Drive
Philipsburg, PA 16866

J. Brooks DiDonato, Esq.
Parker, McCay
Route 73 & Greentree Road
Suite 401
Marlton, NJ 08053
Attorney for Defendants Cole, Artist, Scholtz and Cain

**KUGLER, District Judge**

This matter comes before the Court upon the Motion for Summary Judgment (Doc. No. 42) of the defendants Cole, Artist, Scholtz and Cain ("Defendants"). Plaintiff opposes the motion. The Court has reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons that follow, the Court will grant Defendants' Motion for Summary Judgment.

## BACKGROUND

Plaintiff filed an amended complaint on January 28, 2008 (docket entry 6).  In his amended complaint, Plaintiff alleged that on March 16, 2007, while a pretrial detainee awaiting trial, he was assaulted by three inmates at the Burlington County Detention Center.  He states that the three inmates were gang members who tried to extort Plaintiff for his "canteen."  Plaintiff had refused to give the inmates anything, and informed Officer Cain "that he had a problem with a few of these inmates," yet Officer Cain did nothing.  Shortly after informing the Officer, Plaintiff "was pulled into a cell on E-wing and brutally assaulted."  (Am. Complt., ¶¶ 1,3).

Plaintiff sustained several cuts to his face, and his left leg was broken in three places.  He notified the administration that he was attacked, and he was written up for fighting and given 10 days in segregation.  (Am. Complt., ¶¶ 4, 5).  Plaintiff noted that he was taken to Virtua Hospital in Mount Holly that day, received stitches to his head, and was scheduled for surgery on March 22 for his broken leg.  He was then taken back to the jail and placed in a medical holding cell, where he was administered Motrin for his pain.  He complained of pain to Dr.

Evans, who would not give him any other pain medication.  (Am. Complt., ¶ 6).

Plaintiff argued in his amended complaint that the administration and jail officers knew that gangs were a problem in the facility, but refused to remedy the situation.  (Am. Complt., ¶¶ 2, 7).  He sought relief from defendants Cole, Artist, Scholtz and Cain, and Dr. Evans, alleging that Cain did not make the required rounds of the wing, causing the assault to go unnoticed, and that the others knew of the gang problem at the facility, and recklessly disregarded the risk to inmates by not remedying the situation.  (Am. Complt., ¶¶ 8, 9, 10).  He charges Dr. Evans with giving him "inadequate treatment," and leaving him in pain for six days while he awaited surgery.  (Am. Complt., ¶ 11).[1]

On June 4, 2008, the moving defendants filed an answer to the amended complaint (docket entry 15).  On July 21, 2009, Plaintiff was deposed.  On May 12, 2010, the moving defendants filed this motion for summary judgment (docket entry 42).  Plaintiff filed opposition to the motion on May 26, 2010 (docket entry 43), to which defendants replied on June 2, 2010 (docket entry 44).

---

[1]  This Court notes that Dr. Evans is not listed as a defendant in this matter.  Plaintiff had named a "Dr. Edwards" as a defendant, however, that defendant was dismissed from the case on April 15, 2010 (docket entry 39).

## **DISCUSSION**

### A.  **Defendants' Motion for Summary Judgment**

Defendants argue that they are entitled to summary judgment in this case because Plaintiff's claims against defendands Warden Cole, Captain Artis and Captain Scholtz, are based solely upon their supervisory roles at the jail; because the moving defendants were not aware of a specific threat to the safety of Plaintiff at the hands of other inmates; because Plaintiff was not denied medical treatment; and because Dr. Evans, as the contractor providing medical services to the jail, is fully responsible for all claims concerning medical care.

Defendants submitted a statement of material facts along with their motion.  Defendants admit to a number of facts set forth in Plaintiff's amended complaint.  However, they add information taken from Plaintiff's deposition, including the fact that Plaintiff never filed a complaint or grievance indicating that he was in fear of any other inmate or his safety, and that Plaintiff's only complaint to defendants concerning other inmates was on the date of the incident, when he told defendant Cain that other inmates were controlling the television in the common area.

Plaintiff's opposition did not include a statement of material facts.

B.  **Standard for a Motion for Summary Judgment**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prods. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and
> supported as provided in this rule, an adverse party
> may not rest upon the mere allegations or denials of
> the adverse party's pleading, but the adverse
> party's response, by affidavits or as otherwise
> provided in this rule, must set forth specific facts
> showing that there is a genuine issue for trial.  If
> the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against
> the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof on a claim.  Rather, "the determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson, 477 U.S. at 255.

   Under the Rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322 n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S. at 247-48 (stating that "[b]y its very terms, this standard

provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Civil Rules supplement the Federal Rules of Civil Procedure and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New

Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" Id. at 193 (citations omitted).  However, "the parties' statements pursuant to Local Rule 56.1 "cannot bind the Court if other evidence establishes that the stipulated facts are in error." Id. (citation omitted).

**C.   Analysis**

Plaintiff's amended complaint alleges a Fourteenth Amendment violation concerning defendants' failure to protect him from the state inmate's assault, and a Fourteenth Amendment violation concerning the denial of medical care.

   1.   Standard of Review for Pretrial Detainees

With respect to the conditions of confinement, pretrial detainees are protected by the Due Process Clause of the Fourteenth Amendment, and convicted prisoners are protected by the Eighth Amendment.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-44 (1983); Bell v. Wolfish, 441 U.S. 520, 535 n.16, 545 (1979); Reynolds v. Wagner, 128 F.3d 166, 173-74 (3d Cir. 1997).  The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979).  Not

every restriction imposed on a pretrial detainee amounts to unconstitutional punishment.  See id. at 537.  To determine the constitutionality of a condition of pretrial detention, a "court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  Id. at 538.  "Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it."  Id. (citations and internal quotation marks omitted).

2. Failure to Protect

Plaintiff's failure to protect claim, since he was a pretrial detainee at the time of the incident, is analyzed under the Bell "punishment" standard and the Due Process Clause of the Fourteenth Amendment.  See Hubbard v. Taylor, 399 F.3d 150, 163-67 (3d Cir. 2005).  However, the Third Circuit has applied Eighth Amendment doctrine to pretrial detainees raising claims of failure to protect and inadequate medical care.  See id. at 166 n.22 and accompanying text (3d Cir. 2005).

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety.

See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992).  Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833 (1994) (internal quotations omitted).  "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society."  See id. at 834 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim.  The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety.  See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).  Thus, in the context of a failure to protect claim, the inmate must show that he is "incarcerated under conditions posing a substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837.  "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and

terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care - it is a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 834.

Here, Plaintiff cannot establish that prison officials failed to protect him in violation of the Eighth Amendment. As explained, for claims based on failure to prevent harm, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that those conditions resulted from "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834. In this case, Plaintiff has made no showing of deliberate indifference by Defendants. No record evidence indicates that prison or county officials were aware of a risk to Plaintiff, nor that the circumstances in which Plaintiff found himself were uniquely dangerous such that officials were on notice of a risk to Plaintiff. There is no evidence in the record that Defendants were aware of a specific risk from another, specific inmate, or that a substantial risk of

the inmate's attack on the plaintiff was known, repetitive, and documented, or otherwise obvious to them.  See Farmer, 511 U.S. at 842; accord Hamilton v. Leavy, 117 F.3d 742, 747-48 (3d Cir. 1997); Ingalls v. Florio, 968 F. Supp. 193, 199-200 (D.N.J. 1997).[2]

Plaintiff's deposition testimony reveals that after an incident with the television, he spoke to Officer Cain.  When asked what happened, Plaintiff says that he made a "comment" to Officer Cain, that: "Do you realize who those people deal with.  They want to control and they want you to be afraid of them so they can control everything.  He [Officer Cain] said yeah, that is what they are."  This was the only time Plaintiff commented regarding his attackers to any officers.  The testimony reveals that Plaintiff did not complain to corrections officers about the

---

[2] It is well established that "mere negligent conduct cannot give rise to a § 1983 claim." Anderson v. Harron, No. 08-0185, 2009 WL 2058863, *2 (D.N.J. July 7, 2009) (citing Davidson v. O'Lone, 752 F.2d 817, 829 (3d Cir. 1984)). Where defendants merely have failed to exercise due care in failing to prevent an assault by other prisoners, such negligence is insufficient to establish a violation of the Eighth Amendment. See Davidson v. Cannon, 474 U.S. 344, 345-48 (1986) (finding that prison officials' negligent failure to heed prisoner's notification of threats from another inmate, followed by an assault, is not a deprivation of constitutional rights); see also Schwartz v. County of Montgomery, 843 F. Supp. 962 (E.D. Pa.), aff'd, 37 F.3d 1488 (3d Cir. 1994) (stating that corrections officers' failure to observe institutional policies regarding the supervision of dangerous inmates constitutes negligence, which cannot support a § 1983 action for violation of the Eighth or Fourteenth Amendments).

inmate who instituted the attack, because he was in fear, and that he never made a formal complaint about his attacker. Plaintiff also never asked to be removed from the tier or to be put in segregation.  <u>See</u> Motion, Exhibit D, Deposition of Plaintiff.

As Plaintiff has not put forth any evidence that prison officials were aware of any danger to him, his allegation that prison officials failed to protect him in violation of the Eighth Amendment cannot survive summary judgment.

3.   <u>Medical Care Claims</u>

Likewise, Plaintiff has not established that Defendants violated his Eighth Amendment rights by failing to adequately treat his post-assault injuries.  Under the Eighth Amendment, in order for a Plaintiff to set forth a cognizable claim for a violation of his right to adequate medical care, he must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need standard requiring a showing of a serious medical need and deliberate indifference.  <u>See</u> <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04, 106 (1976).

In this case, Plaintiff's allegation fails.  While Plaintiff's injuries appear to be serious, Plaintiff has made no showing of deliberate difference.  To the contrary, Plaintiff's own deposition testimony reveals that he was treated, repeatedly,

13

by medical personnel at the hospital and at the jail.  For example, Plaintiff states that he was taken to the infirmary, then to the hospital, was treated with stitches for his cuts and had his leg re-set and casted, spent at least two months in the jail clinic in a private cell, went back to the hospital for surgery on his leg, and was returned back to the clinic.  He also was treated by an outside doctor in the jail clinic, given a brace and crutches, and received physical therapy at the hospital.  Plaintiff states that the doctor at the hospital had recommended that Plaintiff receive Percocet, but that the jail clinic gave him Motrin.  See Motion, Exhibit D, Deposition of Plaintiff.  Compare Gallo v. Wash. County, 363 F. App'x 171, 173 (3d Cir. 2010) (affirming summary judgment for prison defendants based on evidence that prison medical staff "actively engaged in efforts to alleviate [the plaintiff's] pain, and to diagnose and to treat his condition").  Since Plaintiff was treated for his serious injury, no record evidence suggests deliberate indifference and Plaintiff's allegations cannot survive summary judgment.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment will be granted.  An appropriate Order accompanies this Opinion.

                                        <u>s/Robert B. Kugler</u>
                                        ROBERT B. KUGLER
                                        United States District Judge

Dated: December 14, 2010